**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CURTIS WRIGHT                                    :

      Plaintiff                            :

v                                                :        Civil Action No. WDQ-06-3078

FRANK SIZER, *et al.*                            :

      Defendants                           :

o0o

**<u>MEMORANDUM</u>**

Pending is Defendants' Motion to Dismiss or for Summary Judgment.  Paper No. 19.
Plaintiff has filed a Response in Opposition.  Paper No. 27.  Upon review of the papers filed and in
light of the issues involved, the Court finds a hearing in this matter unnecessary.  Local Rule 105.6
(D. Md. 2004).  Defendants' motion will be construed as a Motion to Dismiss inasmuch as reference
to documents outside of the pleading is not necessary to the disposition of the pending claims.  For
the reasons that follow, Defendants' Motion to Dismiss will be granted.

Also pending is Plaintiff's Motion for Leave to File an Amended Complaint.  Paper No. 10.
Because the amendment was presented before a responsive pleading was filed, Plaintiff did not need
to seek leave of Court to file it.  The motion will therefore be denied as moot.

<u>Background</u>

The instant complaint was filed by Plaintiff on November 21, 2006, and concerns matters
occurring in 2003 while he was an inmate at the Maryland Correctional Adjustment Center
(MCAC).  He claims that on August 2, 2003, he was accused of violating institutional rules and,
without being provided a due process hearing to determine his guilt, was denied regular meals as
punishment for the alleged rule violation.  Paper No. 1 at p. 2.  In place of regular food, Plaintiff

claims he was provided with food loaf[1] and, as an additional punishment, placed in full mechanical restraints with his hands behind his back for four hours.  *Id.*

Plaintiff further claims that in March, 2006, when he was incarcerated at the Maryland House of Correction,  he told prison staff that he had enemies who were incarcerated at the Western Correctional Institution (WCI).  Despite this knowledge, prison staff allowed his transfer to WCI. *Id.*  He states that Defendants Brown and Williams not only failed to stop his transfer but also prevented him from obtaining a compound job where he could learn a skill and earn money.  *Id.* Plaintiff was transferred to WCI on August 10, 2006.  *Id.*

Plaintiff also alleges that Defendant Abott took DNA from him forcibly on April 7, 2003, while Plaintiff was incarcerated at MCAC. *Id.*  He states a threat of physical violence against him was made by Abott.  *Id.*

Finally, Plaintiff claims that dating back to 2002, there has been a foul-smelling odor emitting from the housing area drains at MCAC.  *Id.*  Plaintiff filed a complaint about the odor and states he received a response from Defendant Corcoran on June 21, 2002 admitting his complaint had merit. *Id.*  Plaintiff also claims he received a favorable response from Commissioner's office on June 4, 2004, and a favorable response from Defendant Dotson on August 24, 2004.  *Id.*  Plaintiff states other complaints about the odor went unanswered on September 29, 2004;,December 5, 2004, and December 27, 2004.  *Id.*

Plaintiff asserts that as a result of the above-described occurrences, he has suffered mental

---

[1]The special management meal program is a behavior modification program and consists of meals of what is commonly referred to as "food loaf."  The loaf consists of whole wheat bread,  imitation cheese, carrots, spinach, raisins, Great Northern Beans, vegetable oil, tomato paste, powdered milk, and potato flakes.  These ingredients are kneaded into loaves and baked.  DCD 110-18, Appendix 2.

anguish as well as physical and emotional pain and suffering.  *Id*. at p. 3.  He explains he has "dreams of torturing and killing the female grandchildren of the Defendants, then cooking and eating their organs so that [he] may forget how their grandparents tortured [him]."  *Id*.

Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Analysis

In his Response in Opposition, Plaintiff insists that his claims raise only claims under the Fourteenth and Fourth Amendments.  Paper No. 27.  Accordingly, the claims are analyzed under those standards.

Fourteenth Amendment Due Process Claim

In the prison context there are two different types of constitutionally protected liberty interests which may be created by state action.  The first is created when there is a state-created entitlement to an early release from incarceration.  *See Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974)

3

(state created liberty interest in good conduct credits).  The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).  Lack of opportunity to earn or have applied diminution credits is not an atypical and significant hardship.  *See Bulger v. United Sates Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995).

The Constitution does not require an evidentiary hearing for every alleged instance of prisoner misconduct.  Plaintiff does not have a liberty interest in the choice of food he is provided as an inmate; thus, placement on a diet of "food loaf" an atypical and significant hardship in relation to the ordinary incidents of prison life.  Indeed, Plaintiff previously filed an Eighth Amendment claim regarding his placement on food loaf and this Court held that, absent any proof of injury, the food loaf diet was not cruel and unusual punishment.  *See Wright v. McCombs*, Civil Action MJG-02-2330 (D. Md. 2002) at Paper No. 25, *citing Adams v. Kincheloe*, 743 F. Supp. 1385, 1390-92 (E.D. Wash. 1990); *United States v. Michigan*, 680 F. Supp. 270, 274-76 (W.D. Mich. 1988).  The failure to provide Plaintiff with a hearing before placing him on food loaf meals was not a violation of his Fourteenth Amendment rights, nor was the failure to provide him with a hearing before placing restraints on him for four hours.  Being restrained in such a manner is well within the reasonable expectations of the ordinary incidents of prison life.

Plaintiff's claims regarding offensive odors emitting from the drains at MCAC,  transfer to WCI, and  failure to provide him with an institutional job are also unavailing.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224

4

(1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995).  The presence of an unpleasant smell in prison is not an atypical and significant hardship, especially where, as here, no injury is alleged to have resulted. Plaintiff also did not have a right to choose the prison to which he was transferred, or to be provided with a prison job.  Absent evidence that there is an unreasonable, pervasive risk of harm to Plaintiff which prison officials have not properly addressed, his transfer provides no basis for a constitutional claim. Plaintiff's claim that he told prison officials he had enemies at WCI failse inasmuch as he does not name those enemies either in his complaint or his response in opposition, and describes no injury arising out of the transfer.   It is not the province of this Court to supplant the authority of correctional officials in the daily operations of the State's prisons.[2] *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also Block v. Rutherford*, 468 U.S. 576, 584– 85 (1984) (courts cannot substitute their judgment on institutional administration for that of prison officials).

Fourth Amendment Claim

The Fourth Circuit has made it clear that there is no protected Fourth Amendment interest with respect to drawing blood for a DNA sample.  *See Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992).  There is nothing "establishing a per se Fourth Amendment requirement of probable cause, or even a lesser degree of individualized suspicion, when government officials conduct a limited search for the purpose of ascertaining and recording the identity of a person who is lawfully confined to prison." *Id*.   Thus, a requirement for a prisoner to provide a DNA sampling may be enforced through administrative disciplinary proceedings and loss of good conduct credits.  *See*

---

[2] This reluctance to supplant correctional officials' judgment is particularly apropos in this case. Plaintiff is no stranger to this Court and his propensity for improper, conduct has been well documented in numerous cases.  *See e.g., Wright v. McCombs,* Civil Action MJG-02-2330 (D. Md. 2002), *Wright v. Corcoran*, Civil Action MJG-02-3843 (D. Md. 2002), *Wright v. Corcoran*, Civil Action MJG-02-3845 (D. Md. 2002), and *Wright v. Sondervan*, Civil Action WDQ-03-3378 (D. Md. 2003).

*Ewell v. Murray*, 11 F. 3d 482, 487 (4th Cir. 1993).  In addition, the Eighth Amendment is not violated when force is used to obtain DNA samples so long as the force used is not applied with the intent to cause harm, but is limited to the amount of force necessary to enforce a lawful order.  *See Sanders v. Coman*, 864 F. Supp. 496, 500 (E.D. N.C. 1994) ( use of force included officers surrounding an inmate while one held his arm still, use of mace, and bending inmates' wrists in a painful manner to induce compliance).

Plaintiff claims DNA was collected from him via threat of physical violence.  Paper No. 1 at p. 2.  Plaintiff does not provide details regarding the circumstances of the alleged threat, nor does he describe an injury resulting from the conduct alleged.   To the extent Plaintiff is attempting to assert a right to refuse compliance with a requirement to provide a DNA sample, he had no protected constitutional right to do so.  An allegation that verbal threats to use physical force were spoken to enforce a lawful order does not state a constitutional claim.

In light of the absence of any evidence that Plaintiff's constitutional rights were violated by any of the conduct alleged, Defendants' Motion to Dismiss shall be granted by separate Order which follows.

July 2, 2007                                          _____/s/_____
Date                                                            William D. Quarles, Jr.
                                                                     United States District Judge

6